# STATE OF MICHIGAN

# COURT OF APPEALS

WANDA SEABOLT,

        Plaintiff-Appellant,

v

CARL CAPARAOTTA,

        Defendant-Appellee.

UNPUBLISHED
August 11, 2016

No. 327095
Oakland Circuit Court
LC No. 2014-139917-NI

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this automobile negligence case, plaintiff, Wanda Seabolt, appeals by right the trial court's order granting the motion for summary disposition by defendant, Carl Caparaotta, and dismissing her claim under MCR 2.116(C)(10). Because we conclude the trial court properly granted the motion, we affirm.

In July 2011, Seabolt had just backed out of a parking spot in the parking lot of her doctor's office when Caparaotta, who was also backing out of a parking spot, struck her car. Seabolt claimed that she hit her head as a result of the collision. A police officer responded to the accident, but Seabolt did not report any injuries and she did not seek medical attention that day.

Seabolt's medical records show that she had a history of serious medical conditions: ischemic events, degenerative disk disease, osteoarthritis, rheumatoid arthritis, chronic and severe pain, a rare blood disorder, and fibromyalgia. Seabolt was treating with Dr. Lawrence Rapp for her spine issues, Dr. Seraphim Pallas for her blood disorder, and Dr. Todd Lininger for pain management. At the time of the accident, Seabolt had been living in an assisted living facility for disabled persons for at least six years.

In October 2001, the Social Security Administration found that Seabolt's impairments precluded her from performing even sedentary work and determined that she was totally and permanently disabled. Seabolt also had a history of a closed-head injury from a February 2008 motor vehicle accident, after which she complained of headaches, dizziness, confusion, memory loss, tremors, emotional disturbances, loss of gait, and balance problems. Seabolt's medical records revealed that she continued to report symptoms consistent with the closed-head injury and degenerative disk disease as late as 2 days before the July 2011 accident and that she had discussed the possibility of back surgery with Lawrence Rapp.

-1-

On appeal, Seabolt argues that the trial court erred in granting Caparaotta's motion for summary disposition. We review de novo a trial court's ruling on a motion for summary disposition. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007).

"A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim." *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001). A party moving for summary disposition under MCR 2.116(C)(10) must specifically identify the undisputed factual issues, MCR 2.116(G)(4), and support its position with affidavits, depositions, admissions, or documentary evidence, MCR 2.116(G)(3)(b). See *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). If the moving party carries its initial burden, the party opposing the motion must then demonstrate a disputed material fact question exists by submitting evidence, "the content or substance of which would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6); see also *Maiden*, 461 Mich at 120-121. When considering a motion under MCR 2.116(C)(10), a court must view the proffered evidence in the light most favorable to the party opposing the motion. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A trial court properly grants the motion when the proffered evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

Under Michigan's no-fault act, MCL 500.3101 *et seq.*, tort liability for non-economic loss arising out of the ownership, maintenance, or use of a motor vehicle is limited to where the injured party sustained a "threshold" injury. MCL 500.3135(1), (3)(b); *McCormick v Carrier*, 487 Mich 180, 189-190; 795 NW2d 517 (2010). Specifically, a plaintiff injured in an automobile accident may recover noneconomic losses only if she has suffered death, serious impairment of body function, or permanent serious disfigurement. MCL 500.3135(1). The no-fault act defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The aggravation of a preexisting condition may constitute a threshold injury where it accelerates or triggers a "serious impairment of body function." See *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009), citing *Wilkinson v Lee*, 463 Mich 388, 394-395; 617 NW2d 305 (2000). Courts may determine whether a person suffered a serious impairment of body function as a matter of law if there is no factual dispute concerning the nature and extent of the plaintiff's injuries, or there is a factual dispute concerning the nature and extent of the plaintiff's injuries, but that dispute is not material to the determination of whether the person suffered a serious impairment of body function. MCL 500.3135(2)(a); *McCormick*, 487 Mich at 192-193.

The Legislature created a specific provision, however, for situations where the plaintiff sustained a closed-head injury. MCL 500.3135(2)(a)(*ii*) provides that "for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." Thus, whether a plaintiff has suffered a serious impairment of a body function in closed-head injury cases is not a question of law for the court if either (1) a licensed

allopathic or osteopathic physician testifies under oath that there may be a serious neurological injury, or (2) the evidence creates a material, factual dispute concerning the nature and extent of the plaintiff's injury. *Churchman v Rickerson*, 240 Mich App 223, 232; 611 NW2d 333 (2000).

In *Churchman*, this Court rejected the plaintiff's argument that, under the plain language of MCL 500.3135(a)(2), a plaintiff who is diagnosed with a closed head injury automatically meets the § 3135 threshold:

> If that were the case, the Legislature would not have required testimony that a plaintiff had sustained a *serious neurological injury*, but simply would have required testimony that a plaintiff had sustained a closed-head injury. Indeed, a closed-head injury "may cause damage that ranges from mild to profound." 3 Olendorf et al., eds, *The Gale Encyclopedia of Medicine* (Farmington Hills, Mich: Gale Research, 1999), p 1349. Thus, to give effect to the phrase "serious neurological injury," we must conclude that the closed-head injury provision of § 3135 requires more than a diagnosis that a plaintiff has sustained a closed-head injury. [*Churchman*, 240 Mich App at 229.]

Here, the only evidence that Seabolt offered in support of her contention that she suffered a closed head injury as a result of the accident was a note authored by Dr. Stanford Rapp. The note was clearly not prepared under oath. In the note Stanford Rapp also did not state that Seabolt may have suffered a *serious* neurological injury as a result of the July 2011 accident. He wrote that Seabolt was under his care for a closed-head injury that occurred in the July 2011 accident, but he did not state how he came to this belief. The note, for these reasons, did not satisfy the requirement of § 3135(2)(a)(*ii*). See *Churchman*, 240 Mich App at 231. Additionally, Seabolt's lawyer admitted that the medical records that he attached to his answer to the motion for summary disposition made no reference to the July 2011 accident.

Seabolt argues on appeal, without any evidentiary support, that "all of Plaintiff's medical providers are in unanimity that she sustained [closed-head] injuries from the underlying accident" and that "should the instant case be permitted to reach the factfinder, testimony would be elicited to that effect." However, it is not sufficient for a plaintiff to promise to offer factual support for their claims at trial. *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). "[A] party faced with a motion for summary disposition under MCR 2.116(C)(10) is, in responding to the motion, required to present evidentiary proofs creating a genuine issue of material fact for trial. Otherwise, summary disposition is properly granted. MCR 2.116(G)(4)." *Id*.

Seabolt relies on an affidavit by Pallas that she attached to her motion for reconsideration. However, MCL 500.3135(2)(a)(*ii*) provides that a question of fact is created if a licensed physician "*who regularly diagnoses or treats closed-head injuries* testifies under oath there may be a serious neurological injury." (Emphasis added.) Pallas is an oncologist and he did not attest that he regularly diagnoses or treats closed head injuries. For that reason alone, Pallas's affidavit, even if considered as part of the record, is legally insufficient to establish a genuine issue of material fact. Additionally, Pallas did not aver that Seabolt suffered a *serious* neurological injury, as required in order to meet the criteria. *Churchman*, 240 Mich App at 231.

Seabolt does not present a specific argument with respect to the back injuries she allegedly suffered as a result of the July 2011 accident, but she generally refers to the diagnosis of lumbar spondylosis from L2-3 through L4-5 in an MRI report dated August 16, 2011. Although the MRI conducted after the accident revealed spondylosis from L2-3 through L4-5, she presented no medical evidence linking this condition to the July 2011 accident. And the fact that the condition appeared at some point after the accident was insufficient to establish causation. See *West*, 469 Mich at 185-186, 186 n 12.

The evidence presented reveals that many, if not all, of Seabolt's problems predated the July 2011 accident. In response to Caparaotta's motion, Seabolt did not present any evidence that would permit the finder of fact to find that the July 2011 accident caused a serious impairment of an important body function or aggravated an existing impairment. MCL 500.3135(5). Because the trial court properly determined that Seabolt did not establish that the accident caused an injury or aggravated an existing injury, we need not consider whether any injury might have affected her general ability to lead her normal life.

The trial court did not err when it granted Caparaotta's motion.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

-4-