CHURCHMAN v RICKERSON

Docket No. 210347. Submitted September 14, 1999, at Detroit. Decided
March 17, 2000, at 9:00 A.M.

DeAnn M. Churchman, a minor, by her next friend, William Church-
man, brought an action in the Wayne Circuit Court against Erik A.
Rickerson, seeking noneconomic damages pursuant to § 3135 of
the no-fault act, MCL 500.3135; MSA 24.13135, for a closed-head
injury sustained in an automobile accident. The court, Michael J.
Talbot, J., granted summary disposition for the defendant, ruling
that the plaintiff, who presented testimony by a physician that she
had sustained "a post traumatic stress disorder with closed-head
injury and traumatic brain injury," cannot recover damages because
she failed to present medical testimony indicating a serious neuro-
logical injury, as required by subsection 3135(2)(a)(ii). The court
also denied the plaintiff's motion for reconsideration. The plaintiff
appealed.

The Court of Appeals held:

1. Under the no-fault act, noneconomic losses may be recovered
by or on behalf of a person injured in an automobile accident only
if the injured person suffers death, serious impairment of body
function, or permanent serious disfigurement. Whether the injured
person has suffered serious impairment of body function or perma-
nent serious disfigurement is for the court to decide as a matter of
law if there exists no factual dispute with regard to the nature and
extent of the injuries, or, where there is such a factual dispute, that
dispute is not material to the determination whether the injured
person has suffered a serious impairment of body function or per-
manent serious disfigurement. With respect to closed-head injuries,
subsection 3135(2)(a)(ii) provides an exception in that it states that
a question of fact for the jury is created regarding whether the
injured person has suffered serious impairment of body function or
permanent serious disfigurement if a licensed allopathic or osteo-
pathic physician who regularly diagnoses or treats closed-head
injuries testifies under oath that there may be a serious neurologi-
cal injury. The closed-head injury exception of subsection
3135(2)(a)(ii) does not apply to this case. Subsection 3135(2)(a)(ii),
in requiring testimony indicating serious neurological injury,
requires more than the diagnosis of closed-head injury that was

presented here. The plaintiff's submission of testimony indicating traumatic brain injury is insufficient to establish that there may be serious neurological injury because "traumatic brain injury" merely means injury to the brain, which injury could be mild, moderate, or severe.

2. In the absence of an affidavit that satisfies the closed-head injury exception, a plaintiff may establish a factual question under the broader language of subsections 3135(2)(a)(i) and (ii). A court cannot determine whether a plaintiff has suffered a serious impairment of body function and enter judgment in favor of a defendant as a matter of law without first making the factual findings required under subsections 3135(2)(a)(i) and (ii). This matter must be remanded for factual findings by the trial court with respect to whether the plaintiff has established a factual question regarding serious impairment of body function.

3. The trial court did not abuse its discretion in denying the motion for reconsideration. The plaintiff, in support of the motion, offered testimony that could have been presented when the issue of the closed-head injury exception of subsection 3135(2)(a)(ii) was first argued.

Affirmed in part and remanded.

CAVANAGH, J., concurring in part and dissenting in part, stated that remand for further findings is appropriate, but that "traumatic" in the context of traumatic brain injury means serious, that "neurological" refers to the nervous system, which includes the brain, and that the plaintiff's submitted testimony indicating traumatic brain injury satisfied the requirement of subsection 3135(2)(a)(ii) of testimony indicating serious neurological injury.

1. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — CLOSED-HEAD INJURIES — QUESTIONS OF FACT.

Whether a person has sustained a serious impairment of body function with respect to a closed-head injury suffered in an automobile accident so as to be able to recover for noneconomic loss is a factual question for the jury if there is sworn testimony by a physician who regularly diagnoses or treats closed-head injuries indicating that there may be a serious neurological injury; testimony merely indicating a diagnosis of closed-head injury or traumatic brain injury is insufficient to create a factual question (MCL 500.3135[2][a][ii]; MSA 24.13135[2][a][ii]).

2. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — PERMANENT SERIOUS DISFIGUREMENTS — QUESTIONS OF LAW.

A court can decide as a matter of law that a person has or has not sustained a serious impairment of body function or permanent seri-

ous disfigurement under the no-fault act if it finds that there is no factual dispute concerning the nature and extent of the injury, or, if there is a factual dispute concerning the nature and extent of the injury, that the dispute is not material to the determination whether a serious impairment of body function or permanent serious disfigurement has been sustained; no judgment may be entered without such findings (MCL 500.3135[2][a]; MSA 24.13135[2][a]).

*Haliw, Siciliano and Mychalowych* (by *Mark G. Chiesa*), for the plaintiff.

*James C. Rabaut & Associates* (by *Gregory E. Hoelscher*), for the defendant.

Before: COLLINS, P.J., and SAWYER and CAVANAGH, JJ.

COLLINS, P.J. Plaintiff DeAnn Marie Churchman, a minor, by her next friend and father, William Churchman, appeals as of right from the trial court's order denying reconsideration of its order granting summary disposition to defendant Erik Arthur Rickerson. We affirm in part and remand for further proceedings.

DeAnn Churchman and her brother, David Lee Churchman, also a minor, were injured in a pedestrian-automobile accident. Eleven-year-old DeAnn suffered a closed-head injury. David and DeAnn, with their father as next friend filed a complaint against Rickerson (defendant), the driver of the automobile involved in the accident, and John Frank Broughton, the owner of that vehicle.[1] After discovery, defendant moved for summary disposition under MCR 2.116(C)(10) on the basis that plaintiffs had not satisfied the threshold requirements for recovery of noneconomic damages set forth in § 3135 of Michi-

---

[1] Plaintiffs subsequently filed an amended complaint that did not include any claims against Broughton.

gan's no-fault act, MCL 500.3101 *et seq.*;   MSA
24.13101 *et seq.*, with regard to either child's claims.

Under Michigan's no-fault act, a plaintiff injured in an
automobile accident may recover noneconomic losses
only if he has suffered death, serious impairment of
body function, or permanent serious disfigurement.
MCL 500.3135(1); MSA 24.13135(1). The version of
§ 3135 that applies in this case[2] provides that
whether the plaintiff has suffered serious impairment
of body function or permanent serious disfigurement
is for the court to decide as a matter of law if there
exists no factual dispute with regard to the nature
and extent of the plaintiff's injuries, or, where there is
such a factual dispute, that dispute is not material to
the determination whether the plaintiff has suffered a
serious impairment of body function or permanent
serious disfigurement. MCL 500.3135(2)(a)(i) and (ii);
MSA 24.13135(2)(a)(i) and (ii). The Legislature cre-
ated a specific provision, however, for situations
where the plaintiff sustained a closed-head injury.
MCL 500.3135(2)(a)(ii); MSA 24.13135(2)(a)(ii) pro-
vides, in pertinent part, as follows:

> However, for a closed-head injury, a question of fact for
> the jury is created if a licensed allopathic or osteopathic
> physician who regularly diagnoses or treats closed-head
> injuries testifies under oath that there may be a serious
> neurological injury.

With regard to DeAnn's claims, defendant argued
below that, while there was evidence that she suf-
fered a closed-head injury, plaintiffs' own expert

---

[2] The Legislature amended § 3135, 1995 PA 222, effective March 28,
1996. Because the injuries in question in this case occurred in January
1997, the amended version applies.

neuropsychologist evaluated DeAnn and found that her injury had resolved itself with minimal, if any, lasting residual effects. Defendant further argued that the affidavit of Laran Lerner, D.O., who examined DeAnn at the request of her attorneys, stated that DeAnn "had sustained a post traumatic stress disorder with closed-head injury and traumatic brain injury," but did not state that DeAnn had sustained a serious neurological injury as required by § 3135.

The trial court first granted summary disposition to defendant with regard to David's claims.[3] Regarding DeAnn's claims, the court noted that § 3135 was recently amended to include the closed-head injury exception and that there was no published case law interpreting that section. The court concluded, on the basis of the plain language of the statute, that Dr. Lerner's affidavit attesting to DeAnn's closed-head injury did not meet the § 3135 threshold because although it provided a diagnosis, it made no mention of the seriousness of the injury. The court then granted summary disposition of DeAnn's claims, dismissed the case with prejudice, and subsequently denied plaintiffs' motion for reconsideration.

On appeal, DeAnn (hereafter "plaintiff") argues that the trial court improperly dismissed her claims because it incorrectly interpreted and applied § 3135(2)(a)(ii). We review a trial court's grant or denial of summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Statutory construction is a matter of law that we review de novo as well. *Oakland Co Bd of Co Rd*

---

[3] No issues regarding the court's dismissal of David's claims were raised on appeal.

*Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995); *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *Turner, supra* at 27. As far as possible, effect should be given to every phrase, clause, and word. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999). Where a statute does not define a term, its ordinary meaning applies. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 469-470; 521 NW2d 831 (1994). Reference to a dictionary is appropriate to determine the ordinary meaning of a word. *Id.* If the plain and ordinary language of the statute is clear, judicial construction is normally neither necessary nor permitted. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). When interpreting a statute, this Court must look at the object of the statute and the harm it was intended to remedy, and adopt a reasonable construction that best accomplishes the purpose of the legislation. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

The no-fault act generally is to be construed liberally because it is remedial in nature. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626,

631; 563 NW2d 683 (1997). However, this rule of construction is intended to apply to the payment of benefits to injured parties, who were intended to benefit from the adoption of no-fault legislation. *Id.* Where appropriate, the act should be broadly construed to effectuate coverage. *McMullen v Motors Ins Corp*, 203 Mich App 102, 107; 512 NW2d 38 (1993). One of the specific purposes of adopting no-fault legislation was to partially abolish tort remedies in favor of first-party insurance benefits by creating the tort-remedy threshold found at MCL 500.3135; MSA 24.13135. *Stephens v Dixon*, 449 Mich 531, 541; 536 NW2d 755 (1995). Thus, a liberal construction of § 3135 is not warranted.

Plaintiff first argues that under the plain language of the statute, a plaintiff who is diagnosed with a closed-head injury automatically meets the § 3135 threshold. We disagree. If that were the case, the Legislature would not have required testimony that a plaintiff had sustained a *serious neurological injury*, but simply would have required testimony that a plaintiff had sustained a closed-head injury. Indeed, a closed-head injury "may cause damage that ranges from mild to profound." 3 Olendorf et al., eds, *The Gale Encyclopedia of Medicine* (Farmington Hills, Mich: Gale Research, 1999), p 1349. Thus, to give effect to the phrase "serious neurological injury," we must conclude that the closed-head injury provision of § 3135 requires more than a diagnosis that a plaintiff has sustained a closed-head injury.

Plaintiff argues further that even if a diagnosis of a closed-head injury is not sufficient to satisfy the threshold requirements, Dr. Lerner's testimony that DeAnn had sustained "a traumatic brain injury" satis-

fied the statute because it was, substantively, testimony that she may have suffered a serious neurological injury. Again, we disagree. Although the statute in question does not define "serious," Black's Law Dictionary defines "serious," when used to describe an injury, illness or accident, as "dangerous; potentially resulting in death or other severe consequences . . . ." Black's Law Dictionary (7th ed), p 1371. Accordingly, the plain language of the statute requires some indication by the doctor providing testimony that the injury sustained by the plaintiff was severe. Here, neither the diagnosis of "traumatic brain injury" nor a literal interpretation of those words necessarily indicates that the neurological injury suffered by DeAnn may be "serious."

Traumatic brain injury may be classified as mild, moderate, or severe. See D. Kushner, M.D., "Mild Traumatic Brain Injury: Toward Understanding Manifestations and Treatment," 158 Archives of Internal Medicine 1617 (Aug, 1998). Indeed, even a diagnosis of mild traumatic brain injury may include "a spectrum of manifestations that can range from transient mild symptoms to ongoing disabling problems." *Id.* Thus, when presented only with a diagnosis of "traumatic brain injury," a trial court is not in a position to know whether that injury was serious. Furthermore, even if considered as a descriptive phrase, "traumatic brain injury" does not necessarily imply that a neurological injury may be serious. Dorland's Medical Dictionary defines "traumatic" as "pertaining to, occurring as the result of, or causing trauma." Dorland's Medical Dictionary (28th ed). The same dictionary defines "trauma" as "a wound or injury, whether phys-

ical or psychic." *Id.*[4] Interpreted literally, then, the phrase "traumatic brain injury" simply describes a closed-head injury that resulted in trauma, or injury, to the brain.

While it is clear from the affidavit presented to the trial court that DeAnn suffered a neurological injury, § 3135 requires that the affidavit must contain testimony that a plaintiff may have sustained a *serious* neurological injury. Again, when interpreting statutes we must, as far as possible, give effect to every phrase, clause, and word. *Sun Valley Foods, supra* at 237. Because there is nothing in Dr. Lerner's affidavit, either literally or substantively, to indicate the *degree* of injury, we find that it was not sufficient to satisfy the threshold requirement of § 3135. We note further that this conclusion is supported by the legislative history of § 3135, which indicates that the amended version of that statute was intended to raise or strengthen the no-fault threshold. See House Legislative Analysis, HB 4341, December 18, 1995.

Plaintiff argues next that even if the affidavit did not satisfy the closed-head injury provision of § 3135, summary disposition was precluded because she presented evidence, including an affidavit from a neuropsychologist and medical records from the hospital where she was treated after the accident, sufficient to raise a question of fact with regard to whether she sustained a serious impairment of body function. Although plaintiff made this argument in the trial court in response to defendant's motion for summary disposition, the trial court did not make any

---

[4] Similarly, Stedman's Medical Dictionary defines "traumatic" as "[r]elating to or caused by trauma," and defines "trauma" as "[a]n injury, physical or mental." Stedman's Medical Dictionary (26th ed), p 1842.

findings with regard to whether plaintiff sustained a serious impairment of body function. Rather, the court simply found that because the affidavit was insufficient to satisfy the closed-head exception of § 3135(2)(a)(ii), defendant was entitled to summary disposition with regard to plaintiff's claims.

The language of § 3135 does not indicate, however, that the closed-head injury exception provides the exclusive manner in which a plaintiff who has suffered a closed-head injury may establish a factual dispute precluding summary disposition. In the absence of an affidavit that satisfies the closed-head injury exception, a plaintiff may establish a factual question under the broader language set forth in subsections 3135(2)(a)(i) and (ii), which, as noted above, provide that whether an injured person has suffered serious impairment of body function is a question for the court unless the court finds that "[t]here is no factual dispute concerning the nature and extent of the person's injuries," or, if the court finds that there is such a factual dispute, that "dispute is not material to the determination as to whether the person has suffered a serious impairment of body function . . . ." This Court has recently held that a trial court cannot determine whether a plaintiff has suffered a serious impairment of body function and enter judgment in favor of a defendant as a matter of law without first making the factual findings required under subsections 3135(2)(a)(i) or (ii). *May v Sommerfield*, 239 Mich App 197, 202; 607 NW2d 422 (1999). Because the trial court in this case did not make the required findings, we cannot decide the merits of this issue on appeal and must remand for further proceedings. See *id.*

Plaintiff's final argument is that the trial court erred in denying the motion for reconsideration. We disagree. This Court reviews a trial court's decision concurring a motion for reconsideration for an abuse of discretion. *Cason v Auto Owners Ins Co*, 181 Mich App 600, 609-610; 450 NW2d 6 (1989). An abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences perversity of will or the exercise of passion or bias rather than the exercise of discretion. *Schoensee v Bennett*, 228 Mich App 305, 314-315; 577 NW2d 915 (1998). MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

In the motion for reconsideration, plaintiff argued that the trial court misunderstood Dr. Lerner's original affidavit and was thus misled. Plaintiff included with the motion a second affidavit from Dr. Lerner, stating that posttraumatic stress disorder with closed-head injury and traumatic brain injury are, by their very nature, serious neurological injuries, and that DeAnn had sustained a serious neurological injury. However, we can find no abuse of discretion in the denial of a motion for reconsideration that rests on testimony that could have been presented the first time the issue was argued. *Charbeneau v Wayne Co General Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987).

Affirmed in part and remanded for further proceedings consistent with this opinion. We instruct the trial court to file its findings with this Court within fifty-six days of the date of this opinion. We retain jurisdiction.

SAWYER, J., concurred.

CAVANAGH, J. (*concurring in part and dissenting in part*). Pursuant to *May v Sommerfield*, 239 Mich App 197, 202; 607 NW2d 422 (1999), remand for further findings is appropriate, and I therefore concur with the result reached by the majority. I write separately, however, because I believe that Dr. Lerner's affidavit was sufficient to satisfy the threshold requirement of the closed-head injury provision of § 3135.

Pursuant to MCL 500.3135(2)(a)(ii); MSA 24.13135(2)(a)(ii), a question of fact for the jury is created if a physician who regularly diagnoses or treats closed-head injuries testifies that there may be a "serious neurological injury." The term "neurological" refers to the nervous system. See *Random House Webster's College Dictionary* (1997), p 880 (defining "neurology"). In vertebrates, including humans, the "nervous system" includes the brain, spinal cord, nerves, and ganglia. *Id.* at 878.

Dr. Lerner testified that plaintiff sustained a "traumatic brain injury." I believe that this language satisfies the requirements of MCL 500.3135(2)(a)(ii); MSA 24.13135(2)(a)(ii). The word "traumatic" is commonly understood to be synonymous with the word "serious." Consequently, I believe that plaintiff has sustained her burden of demonstrating a serious impairment of bodily function or permanent serious disfigurement.