*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KERSTIAN AMJAD AZIZ,

        Plaintiff-Appellant,

v

JENNA 1 TRUCKING INC, METRO PARCEL & FREIGHTS INC, and JACK AMANUEL KHAMMOO

        Defendant-Appellees.

UNPUBLISHED
June 20, 2019

No. 342066
Macomb Circuit Court
LC No. 2016-004052-NI

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In this third-party no-fault action, plaintiff, Kerstian Amjad Aziz, appeals the trial court's opinion and order granting summary disposition under MCR 2.116(C)(10) in favor of defendants, Jenna 1 Trucking, Inc., Metro Parcel & Freights, Inc., and Jack Amanuel Khammoo. Plaintiff argues that the trial court erred when it concluded that plaintiff did not suffer a serious impairment of a body function. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiff and Khammoo were both semi-truck drivers. On April 29, 2015, plaintiff was involved in an accident while riding in the sleeper cab of a semi-truck driven by Khammoo. The two men began their trip driving from Michigan to Alabama to transport auto parts. After leaving from their destination in Alabama, they drove into Texas where they were to make a final stop. At approximately 3:00 a.m., plaintiff settled into the sleeper cab to rest. According to Khammoo, he was driving through Texas when he "fell asleep for a couple seconds" and lost control of the truck. The semi-truck veered off the road, down a ditch, and struck a tree. Plaintiff was thrown around the back of the cab, and he suffered injuries to his head, shoulder, back, and foot.

Plaintiff was transported by ambulance to DeTar Hospital in Victoria, Texas. While at DeTar Hospital, plaintiff had imaging scans done of his head, right shoulder, left knee, and left

-1-

ankle. Plaintiff was diagnosed with a right shoulder dislocation, and a CT scan of his head revealed "minimal hyperdensity within the sulcl [sic] of the right temporal lobe, which may represent a very subtle subarachnoid hemorrhage." Plaintiff was transported to the Brooke Army Medical Center in San Antonio, Texas, for repeat testing related to the possible head injury and further treatment. Doctors at the military hospital treated plaintiff's shoulder, head, and foot. His shoulder, which was dislocated, was "put back into place," and "reduced in the trauma bay by orthopedics at the military hospital." Plaintiff also underwent a repeat head CT scan, which showed no intracranial bleed. An examination of the spine also revealed no spine fracture. Plaintiff was prescribed the painkiller Oxycodone to manage his pain.

Once plaintiff returned to Michigan, he followed up within the first week back with doctors at Beaumont Hospital. Plaintiff underwent another CT scan of his head there. According to the CT scan findings, there was "no acute parenshymal hemorrhage, acute ischemia, mass or midline shift." The impression was "[s]mall bifrontal soft tissue hematomas," but "[n]o acute intracranial injury." In October 2016, approximately 1½ years after the accident, plaintiff visited Dr. David A. Green, a neurologist at the Michigan Institute of Neurological Disorders (MIND). Dr. Green diagnosed plaintiff with a closed-head injury and headaches. In his notes, Dr. Green highlighted that plaintiff said he struck his head in the accident and lost consciousness. Plaintiff complained of headaches and associated neck pain, and he had "a recent MRI of [his] brain but is uncertain of the result." Additionally, according to Dr. Green's report, plaintiff's sister had reported that he had been "more irritable" since the accident.

According to plaintiff, he was no longer able to work, could not help around the house, could not garden or shovel snow, stopped going out with friends, and no longer played soccer since the accident. For those reasons, he claimed that his injuries had affected his general ability to lead his normal life. After the close of discovery, the trial court entertained defendants' motion for summary disposition. Shortly thereafter, the trial court issued its opinion and order granting defendants' motion for summary disposition under MCR 2.116(C)(10). The trial court first concluded that plaintiff failed to show an objectively manifested impairment of a body function. The trial court then concluded that any alleged injury also did not affect plaintiff's general ability to lead his normal life. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). There is a genuine issue of material fact "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id.* (citation omitted).

## III. ANALYSIS

Plaintiff's argument is three-fold. In summary, plaintiff argues the trial court erred: (1) when it failed to address whether there was a factual dispute regarding the nature and extent of his injuries, (2), when it concluded that plaintiff had not shown a serious impairment of a body

function, and (3) when it applied the wrong standard and weighed plaintiff's credibility for purposes of ruling on a motion for summary disposition under MCR 2.116(C)(10). We address each argument in order.

Michigan's no-fault insurance statute limits tort liability. *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). Pursuant to MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Plaintiff argues that defendants remain liable for the April 29, 2015 accident because it resulted in the serious impairment of a body function.

Whether an individual "has suffered [a] serious impairment of body function" is a question of law to be decided by the trial court if either "[t]here is no factual dispute concerning the nature and extent of the person's injuries," or there is a factual dispute, "but the dispute is not material to the determination [of] whether the person has suffered a serious impairment of body function." MCL 500.3135(2)(a)(*i*) and (*ii*). A " 'serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). In order to prove a serious impairment of a body function, a plaintiff must demonstrate: "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)." *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010). Therefore, a trial court must initially determine whether there is a factual dispute regarding the nature and extent of the plaintiff's injuries. After making this determination, the trial court must then turn to the three-prong test enunciated in *McCormick*.

## A. NATURE AND EXTENT OF PLAINTIFF'S INJURIES

Plaintiff first argues that the trial court erred because it failed to address the threshold question of whether there is a factual dispute regarding the nature and extent of plaintiff's injuries. We conclude that the trial court erred as it concerns plaintiff's alleged closed-head injury. In all other respects, plaintiff's claim is without merit.

Our Supreme Court in *McCormick* provided the following preliminary test when analyzing third-party claims based on the serious impairment of a body function:

> To begin with, the court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court.

If the court may decide the issue as a matter of law, it should next determine whether the serious impairment threshold has been crossed. [*Id*. at 215 (citations omitted).]

Thus, once the trial court makes explicit findings regarding the nature and extent of the plaintiff's injuries, it may address the three-prong test for a serious impairment of a body function if necessary.

In this case, the trial court did not address whether there was a factual dispute concerning the nature and extent of plaintiff's injuries. In particular, plaintiff alleged three separate injuries: a right shoulder dislocation, a closed-head injury, and neck and back spasms. The trial court bypassed this threshold question and addressed only whether the injuries met the three-prong test, i.e., whether each injury showed an objectively manifested impairment that both affected an important body function and affected the person's general ability to lead his normal life. As to plaintiff's dislocated shoulder and his alleged neck and back spasms, remand is not required on the threshold issue because there is no factual dispute as to the nature and extent of those injuries.

First, there is no dispute as to the nature and extent of plaintiff's alleged shoulder injury. The parties agree that plaintiff dislocated his right shoulder during the accident, and it would have taken approximately six to eight weeks to heal. While the trial court relied on a radiology report, which indicated that on the date of the exam there was "no evidence of dislocation," this was technically accurate because doctors had previously reset plaintiff's shoulder. With no dispute among the parties as to the extent of the injury, the trial court was able to determine as a matter of law whether the injury met the three-prong *McCormick* test. Therefore, plaintiff's argument fails.

Second, there is no dispute as to the nature and extent of plaintiff's alleged neck and back spasms. While it is true that the trial court did not explicitly address plaintiff's alleged neck and back spasms, there is simply no evidence in the record that raises a genuine issue of fact as to such injuries. Plaintiff cites to medical records that indicate his subjective complaints related to neck and back pain. However, there is no document in the record that indicates plaintiff was ever diagnosed with a medical condition that explains the origin of neck or back spasms. Without any record evidence, there is no factual dispute, and plaintiff's claim fails.

Plaintiff, however, argues that the trial court erred when it failed to address the nature and extent of his closed-head injury. We agree.

MCL 500.3135(2)(a)(*ii*) provides a threshold requirement in order to automatically raise a factual dispute as to the nature and extent of a closed-head injury, which states, "[F]or a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." Thus, the "closed-head injury provision of § 3135 requires more than a diagnosis that a plaintiff has sustained a closed-head injury." *Churchman v Rickerson*, 240 Mich App 223, 229; 611 NW2d 333 (2000). In *Churchman*, we declined to accept the plaintiff's argument that a simple diagnosis of a closed-head injury automatically meets the threshold of the no-fault statute, MCL 500.3135(2)(a)(*ii*). *Churchman*, 240 Mich App

at 229. Instead, the plaintiff had to provide proof in the form of testimony made under oath that the plaintiff sustained a "serious neurological injury." *Id*. In *Churchman*, this testimony was made in the form of an affidavit. *Id*. at 227, 231. Additionally, for closed-head injuries, "the statute requires some indication by the doctor providing testimony that the injury sustained by the plaintiff was severe." *Id*. at 230.

In this case, plaintiff presents only a diagnosis of a closed-head injury. There is no evidence in the record of an affidavit or other sworn testimony from a doctor that would support this diagnosis and the proposition that the closed-head injury was serious. See *id*. ("Traumatic brain injury may be classified as mild, moderate, or severe."). Dr. Green's diagnosis is noted in plaintiff's medical record, but the record does not constitute testimony under oath as required under MCL 500.3135(2)(a)(*ii*). Moreover, Dr. Green's diagnosis does not include any indication as to the severity of the closed-head injury. Therefore, as in *Churchman*, plaintiff has not raised a factual dispute as to the closed-head injury sufficient to meet the requirement under MCL 500.3135(2)(a)(*ii*).

However, we explained in *Churchman* that the exception under MCL 500.3135(2)(a)(*ii*) does not automatically preclude a plaintiff from surviving summary disposition. In *Churchman*, this Court stated:

> The language of § 3135 does not indicate . . . that the closed-head injury exception provides the exclusive manner in which a plaintiff who has suffered a closed-head injury may establish a factual dispute precluding summary disposition. In the absence of an affidavit that satisfies the closed-head injury exception, a plaintiff may establish a factual question under the broader language set forth in subsection 3135(2)(a)(*i*) and (*ii*) . . . . This Court has recently held that a trial court cannot determine whether a plaintiff has suffered a serious impairment of body function and enter judgment in favor of a defendant as a matter of law without first making the factual findings required under subsections 3135(2)(a)(*i*) or (*ii*). [*Churchman*, 240 Mich App at 232.]

In this case, the trial court failed to address the nature and extent of plaintiff's closed-head injury under MCL 500.3135(2)(a)(*i*) and (*ii*). Under *Churchman*, remand is required so that the trial court may address this threshold question. Furthermore, the trial court also did not address Dr. Green's diagnosis when it applied the *McCormick* three-prong test to plaintiff's closed-head injury. On remand, if the trial court reaches the *McCormick* test after answering the threshold question, it is directed to reevaluate the evidence of the closed-head injury in a light most favorable to plaintiff. Therefore, we vacate this portion of the trial court's opinion and order.

## B. SERIOUS IMPAIRMENT OF A BODY FUNCTION

Plaintiff argues that even if there is no factual dispute regarding the nature and extent of his shoulder, neck, and back injuries, the trial court nonetheless erred when it concluded that plaintiff did not suffer a serious impairment of a body function. We disagree.

MCL 500.3135(5) sets forth three prongs that are necessary to establish a serious impairment of a body function: (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life. The parties only dispute the first and third prongs of the test.

## 1. OBJECTIVELY MANIFESTED IMPAIRMENT

Plaintiff first argues the trial court erred when it held that his dislocated right shoulder did not constitute an objectively manifested impairment. This argument is without merit.

An objectively manifested impairment is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. Importantly, it is the *impairment* that must be objectively manifested—not the injury. *Id*. "[W]hen considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id*. at 197. (quotation marks and citation omitted).

There is no dispute that plaintiff dislocated his right shoulder. The trial court, however, did not err when it concluded that the right shoulder dislocation was not objectively manifested because the radiology report indicated no dislocation and there was no objective physical manifestation of impairment. The day after the accident, plaintiff's shoulder was reset and, although he used a sling for approximately a week, there was no further medical intervention required. On appeal, plaintiff does not indicate any kind of impairment as it relates to his shoulder, and we conclude that there is simply no evidence in the record indicating an objectively manifested impairment.

Plaintiff also claims the spasms in his neck and back constitute objectively manifested impairments because they are clearly a physical impairment that a person would observe. However, plaintiff has provided no medical documentation that supports this claim. While plaintiff has made subjective complaints of neck and back spasms, the medical records indicate that plaintiff has full range of motion, and the tests do not show any kind of impairment, let alone a serious one. Therefore, this argument fails. We conclude that the trial court properly granted summary disposition because there exists no objectively manifested impairment.

## 2. GENERAL ABILITY TO LEAD PLAINTIFF'S NORMAL LIFE

Plaintiff next argues the trial court erred when it held that his injuries did not affect his general ability to lead his normal life. This argument also fails.

An injury affects a person's general ability to lead their normal life if the injury has "an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. "[T]his requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id*. This necessitates comparing the plaintiff's life before and after the accident. *Id*. The statute only requires that the person's general ability to lead their life has been affected; it does not require that their life has been destroyed. *Id*.

In this case, plaintiff has not raised a genuine issue of fact as it concerns plaintiff's shoulder, neck, and back injuries. Although plaintiff claims he fatigues easily, cannot perform household chores, has no desire to interact with friends and family, can no longer play soccer, and cannot work, he has not provided any proof or explanation as to how his injuries actually prevent him from performing these activities. There is no showing that the shoulder, neck, or back injuries have affected his ability to do any of these tasks, and the medical records all indicate normal functioning.

## C. REMAINING CLAIMS

Finally, plaintiff argues the trial court failed to apply the proper standard for reviewing a motion for summary disposition under MCR 2.116(C)(10) because it did not view the evidence in a light most favorable to plaintiff as the non-moving party and because it improperly weighed credibility. Because remand is required on the issue of the closed-head injury, this Court need not further address whether the trial court applied the proper standard. As to plaintiff's alleged neck and back injuries, there was no evidence in the record that supported this argument, and the trial court did not err by not addressing the issue. Regarding the shoulder injury, plaintiff's claim fails.

Under MCR 2.116(C)(10), trial courts must view the record in a light most favorable to the non-moving party. *Campbell-Durocher Group*, 322 Mich App at 224. And a trial court may not "weigh the evidence or make determinations of credibility when deciding a motion for summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 480; 776 NW2d 398 (2009).

After indicating that plaintiff suffered an injury to his right shoulder, the trial court cited the proper standard for reviewing the motion for summary disposition. In explaining its decision, the trial court indicated there was no dislocation the day after the accident, which was factually accurate. The trial court also thoroughly analyzed the third prong of the *McCormick* test, finding no connection between plaintiff's shoulder injury and his ability to lead his normal life. On this record, we cannot conclude that the trial court failed to view the evidence in a light most favorable to plaintiff. Additionally, the trial court did not make a credibility decision in deciding the case. The trial court acknowledged that plaintiff indicated he could not work anymore. However, the trial court then cited objective evidence in the record showing that plaintiff was able to work after the accident. The trial court was not weighing plaintiff's credibility—it was analyzing the evidence and determining whether there was a factual dispute as to any of the elements under *McCormick*. The trial court did not err in its analysis, and summary disposition was properly granted in favor of defendants as to the shoulder, neck, and back injuries.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello