*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JALYNE WEST, also known as JAELYN WEST, also known as NINA WEST,

Plaintiff-Appellant,

v

RICHARD ERNEST WILLIAMS,

Defendant-Appellee.

UNPUBLISHED
January 13, 2025
11:02 AM

No. 370762
Washtenaw Circuit Court
LC No. 23-000538-NI

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

In this no-fault case, plaintiff Jalyne West, proceeding *pro per*, appeals as of right the trial court's order granting defendant Richard Ernest Williams's motion for summary disposition pursuant to MCR 2.116(C)(10). On appeal, plaintiff argues that she established a genuine issue of material fact as to whether she suffered a "serious impairment of body function" for the purposes of MCL 500.3135, and that the trial court erred by concluding otherwise. Plaintiff also argues that the trial court erred by amending the scheduling order and, as a result, defendant's motion for summary disposition should have been deemed untimely because it was not filed in accordance with the deadlines set forth in the original scheduling order. Relatedly, plaintiff argues that the trial court erred by entertaining the motion for summary disposition on a day with a closed motion docket. We disagree and affirm the trial court.

## I. FACTS

On April 21, 2023, plaintiff filed a *pro per* complaint against defendant, alleging as follows. On July 7, 2022, plaintiff and defendant were involved in a motor-vehicle accident on

-1-

Michigan Avenue in Washtenaw County,[1] for which defendant received a failure-to-yield ticket.[2] Plaintiff was promptly transported by ambulance to the University of Michigan Emergency Department, where she was treated for her injuries. Plaintiff explained that the accident has caused her ongoing neck, back, and shoulder pain, as well as "Post Traumatic stress." Plaintiff sought damages exceeding $25,000 under the no-fault act, MCL 500.3101 *et seq*. Further, in an amended complaint, plaintiff specifically listed medical bills totaling about $43,000 that she allegedly incurred as a result of the accident.[3]

On June 13, 2023, the trial court entered a scheduling order providing that discovery must be concluded by November 17, 2023; dispositive motions, including motions for summary disposition, must be filed and heard by January 10, 2024; and non-dispositive motions must be filed and heard by January 24, 2024. Moreover, the scheduling order established a January 25, 2024 case-evaluation date; a March 5, 2024 settlement-conference date; and a March 18, 2024 trial date. The scheduling order stated that "all dates are dates certain and may not be changed without good cause." (Emphasis omitted.)

On January 5, 2024, defendant moved to adjourn all pending dates for approximately 90 days, alleging that plaintiff had not yet provided discovery information about personal protection insurance (PIP) benefits paid by her insurer, AAA, and that defense counsel had a vacation planned that would conflict with the trial date. In particular, with regard to the first allegation, defendant stated:

> In the course of discovery, Plaintiff has asserted damages based on no-fault PIP benefits paid by her insurer, AAA. Defendant has requested, and Plaintiff has promised, to provide that information. However, it has not been produced.

The motion was accompanied by a notice of motion hearing, as well as proof of electronic service through plaintiff's e-mail.

On January 8, 2024, plaintiff filed her objection to the motion for adjournment, asserting that she "sent via Email the requested AAA medical Billings that had been provided to plaintiff and the defense attorney never requested any information in discovery in the form of a written request for a medical release, where he could receive any medical information." Moreover, plaintiff filed three additional documentary items with the trial court that week. While the filings are difficult to follow, it appears that plaintiff attempted to show the trial court that she had provided the discovery at issue to defendant. For example, a January 9, 2024 filing included a

---

[1] The accident occurred a few weeks after plaintiff graduated from high school.

[2] According to the State of Michigan Traffic Crash Report that plaintiff attached to her complaint, defendant engaged in the hazardous action of "Failed to yield," and plaintiff did not engage in hazardous action.

[3] Generally, no-fault benefits are available for these medical expenses without resort to a negligence action. See MCL 500.3107(1)(a). The primary purpose of a negligence action in a case governed by the no-fault act is to obtain non-economic damages in limited circumstances. See MCL 500.3135(1).

"Payment Log" from AAA identifying the medical payments that AAA made to medical providers on behalf of plaintiff.

On January 9, 2024, the trial court entered an amended scheduling order providing that discovery must be concluded by February 23, 2024; dispositive motions must be filed and heard by May 1, 2024; and non-dispositive motions must be filed and heard by May 15, 2024. The amended scheduling order expressly noted that the trial court had reviewed plaintiff's multiple filings beforehand. In addition, the amended scheduling order noted that "[t]he dockets close early and the court will not grant permission to come on a closed docket."

On January 27, 2024, plaintiff moved for reconsideration of the amended scheduling order. On February 6, 2024, the trial court denied the motion, stating that "in email exchanges with court staff, plaintiff asserted that she had no objections to the First Amended Scheduling Order."

On March 21, 2024, defendant moved for summary disposition under MCR 2.116(C)(10). In the accompanying brief, defendant argued that plaintiff did not show an "objectively manifested" serious impairment of body function because her alleged medical issues were subjective. To support this argument, defendant submitted documentary exhibits indicating the following: (1) the State of Michigan Traffic Crash Report identified "C" injury for plaintiff at the scene, which apparently indicates no visible signs of injury; (2) a prehospitalization report stated, "PT COMPLAINS OF PAIN TO THE BACK OF HER HEAD AND MIDDLE OF HER BACK. NO SIGN OF INJURY"; (3) a hospitalization report stated, "small abrasion/bruising to her abdomen," "X-ray imaging of the patient's chest, left wrist, right knee and bilateral tibia/fibula did not show any acute findings," and "[t]he patient was overall feeling well at the completion of her workup and was ultimately agreeable to discharge at this time. She tolerated oral challenge without any issues. She was ambulatory without any issues as well."; (4) reports from Michigan Head & Spine Institute between September 2022 and July 2023 indicated that plaintiff repeatedly complained of headaches and back pain, suffered from anxiety, and "will feel shaking in her hands when she lifts anything"; and (5) a January 10, 2023 report from Spectrum Health stated, "[u]nremarkable noncontrast MRI of the cervical spine."

On March 30, 2024, plaintiff filed a response to the motion for summary disposition, in which she essentially asserted that she established a genuine issue of material fact for the purposes of MCL 500.3135. Moreover, during the following month, plaintiff separately filed about two dozen documentary items with the trial court. Most of these filings apparently were intended to establish the extent and severity of her injuries. For example, plaintiff submitted multiple medical records from the Michigan Head & Spine Institute indicating that she had been treated by that entity once every few months since the accident for various pains and to check her physical health. For the purposes of this case, the two most relevant documents are as follows.

On April 6, 2024, plaintiff submitted an affidavit from her father explaining that she played softball and basketball in high school but, after the accident, no longer plays these sports in college. Plaintiff's father averred that "[e]very day when Jaelyn is at home and she does come home regularly, when home I notice Jaelyn sleeps all the time and is very short tempered with me, she was never like this before the accident. . . . I continue to hear about in pain in her Back and neck, and about her headaches."

On April 19, 2024, plaintiff submitted an affidavit from Dr. Sophia Eleftheria Grias-Radwanski dated that same day stating, in relevant part:

1. I am a practicing, board certified, physician licensed by the State of Michigan as a Medical Doctor and specialize in Physical Medicine and Rehabilitation.

2. On September 9th 2022, I evaluated and treated Ms. Jaelyn, aka Nina West, at the request herself.

3. As a result of said examination, it is my Expert Medical Opinion as a practicing physician licensed by the state of Michigan as a medical Doctor state that Jaelyn West did sustain the following injuries in this auto accident of July 7th 2022.

a. Ms. West has by reason of her injuries sustained in this MVA, had to incumber intermittent bouts of physical therapy for the past two years and repeatedly engaged in ongoing doctors' appointments with myself and other treating physicians. She also was unable to engage in many of her sports activities, mainly softball and basketball. Further Ms. West has had to change jobs three times. Lastly, she has had a drop in her grade point average since the auto accident.

b. Ms. West suffers from Post Traumatic Concussive Syndrome and Adjustment Disorder with anxiety.

c. Ms. West has been ordered by myself to complete Neuropsychological testing of which she has completed. They confirmed a history of concussion and anxiety. Ms. West is scheduled for follow up and review the results in the near future.

d. Due to the motor vehicle crash, Ms. West sustained injuries including chronic pain in her cervical and thoracic spine with cervicogenic headaches, mechanical low back pain, adjustment disorder with and anxiety, with post-concussion syndrome. She has suffered with many adjustments in her life because of these injuries mentioned in this affidavit.

Additionally, an included printout of Dr. Grias-Radwanski's background, which may have been taken from the website of the Michigan Head & Spine Institute, stated that she is certified by the "American Board of Physical Medicine and Rehabilitation."

On May 1, 2024, trial court held a hearing on the motion for summary disposition. After the parties presented their respective arguments, the trial court credited plaintiff for presenting her case but nonetheless granted summary disposition in favor of defendant:

[Y]our ability at 20 years old to grasp many things is, as I said, remarkable. Unfortunately, the problem is that there is – I know it can seem counterintuitive that you can't sue for any injury, but that was . . . a trade-off with the no-fault law is that the first question, which is the role of the Court, the issues of whether the

injury the person has suffered is a serious impairment of bodily function, or permanent serious disfigurement are questions of law for the Court. And I have read, being presented by Ms. West, I have read all her exhibits, which included the head, neck, and spine, whatever that firm was – that medical provider was called. I read all those documents that she presented as well, Michigan Head and Spine Institute, have read those all as well.

I am going to find that Plaintiff has failed to meet the no-fault threshold of MCL 500.3135 for serious impairment of important bodily function. The Plaintiff did not show objective manifested impairment of important bodily function that affects her normal general ability to lead a normal life. I find there is no genuine issue of material fact. I will grant the motion for summary disposition under (C)(10).

I will also find the new scheduling order was properly entered, and thus Defendant's motion for summary disposition was timely and agreeing to hear Defendant's motion for summary disposition.

The same day, the trial court entered a written order memorializing its opinion on the record.

On May 6, 2024, plaintiff moved for reconsideration, arguing that the trial court erred by entertaining the motion for summary disposition on May 1, 2024, despite the fact that the docket for that date already was closed at one point. On May 15, 2024, the trial court denied the motion for reconsideration with a relatively extended explanation:

Plaintiff articulates no objection to the ruling or the order. Rather, plaintiff asserts that defendant's motion for summary disposition should not have been scheduled for hearing because the scheduling order states motions will not be allowed to come on a closed docket, and the 5/1/24 motion docket was (at one time) closed.

Plaintiff fails to understand the fluid nature of motion dockets, and that dockets open and close as the caps are met (closing the docket) and then re-opened because motions are withdrawn and/or cancelled. Defendant's motion was properly on the 5/1/24 docket due to the availability of space at the time defendant asked to have his motion heard.

Plaintiff filed her response to the Motion for Summary Disposition, was present at the motion hearing (via Zoom), and gave her 10-minute response to the motion for summary disposition.

Plaintiff does not argue that the court committed a palpable error . . .

Rather, plaintiff argues that the motion should not have been heard. Allowing the motion for summary disposition to come onto the docket when a slot opened up is within the court's discretion and no error was committed. A trial court has the inherent authority to control its own docket. . . .

This appeal followed.

## II. SCHEDULING MATTERS

Plaintiff primarily argues that the trial court erred by amending the scheduling order and, as a result, defendant's motion for summary disposition should have been deemed untimely because it was not filed in accordance with the deadlines set forth in the original scheduling order. Relatedly, plaintiff argues that the trial court erred by entertaining the motion for summary disposition on a day with a closed motion docket. In other words, plaintiff contends that because the motion docket for May 1, 2024, was fully scheduled with other cases, the trial court should not have added the instant case to that docket. We disagree with both arguments.

To the extent that this issue requires the interpretation of court rules, our review is de novo. *Barclay v Crown Building & Dev, Inc*, 241 Mich App 639, 642; 617 NW2d 373 (2000). Otherwise, we review for an abuse of discretion a trial court's decision regarding a scheduling order. See *Kemerko Clawson, LLC v RXIV Inc*, 269 Mich App 347, 349-350; 711 NW2d 801 (2005). A trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Regarding scheduling orders, MCR 2.401(B)(2)(a)(*ii*) provides that "the court shall establish times for events and adopt other provisions the court deems appropriate, including . . . the amendment of pleadings, adding of parties, or filing of motions[.]" MCR 2.401(B)(2)(a) further provides that "[m]ore than one such order may be entered in a case." MCR 2.503, which governs motion hearings, provides that "[i]n its discretion the court may grant an adjournment to promote the cause of justice. An adjournment may be entered by order of the court either in writing or on the record in open court, and the order must state the reason for the adjournment." MCR 2.503(D)(1). Further, in addition to the court rules, "[t]rial courts possess the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016) (cleaned up). "An exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion." *Id*. (quotation marks and citation omitted).

Regarding motion hearings, MCR 2.119(E)(1) provides as follows:

> Contested motions should be noticed for hearing at the time designated by the court for the hearing of motions. A motion will be heard on the day for which it is noticed, unless the court otherwise directs. If a motion cannot be heard on the day it is noticed, the court may schedule a new hearing date or the moving party may renotice the hearing.

Turning to the merits of the issue, as to plaintiff's first argument, the trial court did not abuse its discretion by amending (i.e., adjourning) the original scheduling order. Setting aside the fact that plaintiff apparently agreed to the amended scheduling order through an e-mail exchange with the court, the amendment was justified because defendant reasonably believed that he did not yet have complete discovery from plaintiff. Specifically, in her complaint, plaintiff claimed damages from defendant partially based upon some of her medical expenses. While the record is not entirely clear, it appears that plaintiff provided some or all of her medical bills to defendant in

a timely manner, but did not provide a record of the payments made by her no-fault insurer on her behalf. Thus, by seeking to amend the original scheduling order, defendant apparently sought no-fault records from plaintiff, not medical records from plaintiff. Given this apparent lack of complete discovery, the trial court did not abuse its discretion by amending the original scheduling order to allow additional time for discovery.

As to plaintiff's second argument, the trial court did not err or otherwise abuse its discretion by entertaining the motion for summary disposition on a day with a closed motion docket at one point. MCR 2.119(E)(1) confers wide authority on the trial court to decide when a contested motion will be heard. Presumptively, a contested motion will be heard on the day it is noticed—here, May 1, 2024—unless the trial court "otherwise directs." *Id*. Consequently, the trial court in this case was within its discretion to entertain defendant's motion for summary disposition on May 1, 2024, because it did not "otherwise direct." Further, there is nothing to suggest that plaintiff was prejudiced by the trial court's decision to entertain the motion on that date. See MCR 2.613(A).

Accordingly, relief is not warranted for this issue.

### III. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by concluding that she failed to establish a genuine issue of material fact as to whether she suffered a "serious impairment of body function" for the purposes of MCL 500.3135. We disagree.

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Id*. at 5-6.

"Tort liability is limited under the Michigan no-fault insurance act." *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). However, MCL 500.3135 provides, in relevant part:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

> (2) For a cause of action for damages under subsection (1) . . . , all of the following apply:

> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

-7-

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

\* \* \*

(5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

The issue in this case concerns "serious impairment of body function" under MCL 500.3135(1). Under MCL 500.3135(5), a plaintiff must satisfy three elements for the serious-impairment threshold: "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)." *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010). With regard to the first element, "an injury is an 'objectively manifested impairment' if it is commonly understood as one observable or perceivable from actual symptoms or conditions." *Patrick*, 322 Mich App at 611 (some quotation marks and citation omitted). For instance, medically documented hearing loss constitutes an "objectively manifested impairment." *Id*. at 608.

Further, with regard to closed-head injuries, the mere fact that a plaintiff has suffered such an injury is not sufficient to satisfy MCL 500.3135. *Churchman v Rickerson*, 240 Mich App 223, 229; 611 NW2d 333 (2000). Rather, the statute requires "serious neurological injury." *Id*. "Accordingly, the plain language of the statute requires some indication by the doctor providing testimony that the injury sustained by the plaintiff was severe." *Id*. at 230. As a result, for example,

a diagnosis of "traumatic brain injury" is insufficient to satisfy the statute without some indication that the injury is serious or severe. *Id.*

In this case, viewing the evidence in the light most favorable to plaintiff, the evidence indicates that plaintiff suffers from post-concussion syndrome, as well as continuing pain in the head and back; that she played sports in high school but does not do so in college, apparently as a result of her continuing pain; and that her grade point average in college is lower than it was in high school. Arguably, the fact that plaintiff played sports in high school but does not do so in college as an apparent consequence of her continuing pain is sufficient to show the second and third elements of the *McCormick* test, i.e., that she lost (2) an "important body function" that (3) affects her "general ability to lead [her] normal life." See *McCormick*, 487 Mich at 215. See also *Fisher v Blankenship*, 286 Mich App 54, 62; 777 NW2d 469 (2009) ("Thus, where limitations on sporting activities might not rise to the level of a serious impairment of body function for some people, in a person who regularly participates in sporting activities that require a full range of motion, these impairments may rise to the level of a serious impairment of a body function.") (quotation marks and citation omitted).

However, after reviewing the evidence, and setting aside the affidavit of Dr. Grias-Radwanski, plaintiff has failed to satisfy the first element of the *McCormick* test, i.e., that she suffered an "objectively manifested impairment." See *McCormick*, 487 Mich at 215. For example, the record does not indicate the presence of any specific bone, muscle, or tissue damage that would cause plaintiff's continuing pain. At most, a March 3, 2023 medical report from the Michigan Head & Spine Institute provides, "Myofascial neck and thoracic pain. MRI was negative for any disc herniation. Most likely it is a myofascial strain that is slowly improving." However, this possibility falls short of an objectively manifested impairment. And, we are unable to identify any other evidence in the record of a specific, objectively manifested injury.

Thus, plaintiff's claim rests solely on the affidavit of Dr. Grias-Radwanski, which indicates that plaintiff suffers from post-concussion syndrome as a result of the accident. Notwithstanding that there are procedural issues with exclusive reliance on that affidavit, such as the fact that it is not supported by the underlying medical records themselves and the fact that it arguably was not timely filed, see MCR 2.302(A), the affidavit does not show that plaintiff suffered "serious neurological injury." See *Churchman*, 240 Mich App at 229. As *Churchman* explains, a closed-head injury must rise to the level of a "serious neurological injury" to satisfy MCL 500.3135:

> Plaintiff first argues that under the plain language of the statute, a plaintiff who is diagnosed with a closed-head injury automatically meets the § 3135 threshold. We disagree. If that were the case, the Legislature would not have required testimony that a plaintiff had sustained a *serious neurological injury*, but simply would have required testimony that a plaintiff had sustained a closed-head injury. Indeed, a closed-head injury "may cause damage that ranges from mild to profound." 3 Olendorf et al., eds., *The Gale Encyclopedia of Medicine* (Farmington Hills, Mich: Gale Research, 1999), p. 1349. Thus, to give effect to the phrase "serious neurological injury," we must conclude that the closed-head injury provision of § 3135 requires more than a diagnosis that a plaintiff has sustained a closed-head injury. [*Id.*]

-9-

Consequently, because the affidavit does not show plaintiff suffered a "serious neurological injury," and instead merely states, in a conclusory manner, that plaintiff suffers from post-concussion syndrome, it is insufficient to satisfy MCL 500.3135. Moreover, even if the affidavit did show that plaintiff suffered a "serious neurological injury," it does not link that injury with plaintiff's continuing pain, claimed inability to play college sports, or other negative aspects allegedly arising from the accident.[4]

For these reasons, the trial court correctly granted summary disposition in favor of defendant.

## IV. CONCLUSION

The trial court did not commit any procedural error with regard to amending the scheduling order or its motion practice. In addition, the trial court correctly granted summary disposition in favor of defendant. Therefore, we affirm.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates

---

[4] There are other problems with reliance on the affidavit. For example, there is nothing in the record to indicate the original diagnosis of a concussion. While it might be true that a patient can be diagnosed with post-concussion syndrome in circumstances similar to the instant case without an original diagnosis of a concussion, there is nothing in the record to support reaching such a conclusion here.