*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ALLEN Minors.

UNPUBLISHED
March 23, 2023

No. 362165
Ingham Circuit Court
Family Division
LC Nos. 21-000491-NA and
          21-000492-NA

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Respondent-mother (respondent) appeals as of right the order of the family division of the circuit court terminating her parental rights to her two minor children under MCL712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (likelihood of harm if returned). Respondent argues that the court erred in concluding that the statutory bases for termination were proved by clear and convincing evidence. Respondent also appeals the order denying her motion for rehearing or reconsideration based on a claim of ineffective assistance of counsel. We affirm.

## I. STANDARDS OF REVIEW

This Court reviews for clear error a finding that a statutory ground for termination has been proved by clear and convincing evidence. MCR 3.977(K); *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). To be clearly erroneous, a finding must be more than possibly, or even probably, wrong: "A decision qualifies as clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted); *In re Dearmon*, 303 Mich app 684, 700; 847 NW2d 514 (2014). This Court also reviews the trial court's finding regarding best interests for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). "An abuse

of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). Questions of law bearing on the trial court's decision are reviewed de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610, 616 (2019).

## II. STATUTORY GROUNDS

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3), which states in pertinent part as follows:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court need only find that one statutory ground has been proved to support termination of parental rights. *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

Child protective proceedings are a single continuous action. *In re LaFlure*, 48 Mich App 377, 391; 210 NW2d 482 (1973). Therefore, evidence admitted at any one hearing is to be considered evidence in all subsequent hearings. Here, the trial court stated on the record that is had carefully reviewed the entire record, which included periodic caseworker reports, a psychological evaluation, substance-abuse assessments, and findings from five review hearings.

## III. FACTUAL FINDINGS

The trial court did not clearly err in terminating respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*). In June 2021, the children were removed from respondent's custody and care because the newborn child tested positive for methamphetamine, cocaine, opiods and ecstasy shortly after birth and exhibited signs of severe drug withdrawal; mother denied that the baby experiencd drug withdrawal, however. At the July 7, 2021 adjudication proceeding, the trial court assumed jurisdiction over the children after respondent admitted to an amended petition alleging that she had a history of substance abuse, declined offered mental-health and substance-abuse treatment, had a presumptive positive drug screen for illicit drugs while pregnant with her younger child, and had denied the baby's drug withdrawal symptoms. At the July 27, 2021 dispositional hearing, petitioner was ordered to make reasonable family reunification efforts, and respondent was ordered to comply with her parent-agency agreement including not possessing or using any illegal substances, providing random drug screens, attending Alcoholics Anonymous or Narcotics Anonymous meetings at least twice per week, attending supervised parenting time, and, signing any releases of information as requested by case workers.

At the termination hearing, the assigned foster care specialist testified that respondent's substance abuse was the primary reason that led to the court's intervention, but respondent's mental health had also been an ongoing concern. Petitioner made numerous referrals, including for a psychological evaluation, substance-abuse assessments, and six substance-abuse treatment programs. Unfortunately, respondent failed to complete or comply with the service providers' treatment recommendations.

During her psychological evaluation, respondent reported that heroin was her drug of choice from the age of 19 until 26. She was incarcerated for 13 months for possession of heroin and analogs and then was sober for four years. She had previously participated in three substance-abuse treatment programs. The psychological evaluator's diagnoses included a "high probability" of substance-use disorders, along with mixed-personality disorder, and adjustment disorder with mixed anxiety and depressed mood.

Respondent completed her first substance abuse assessment but was unwilling to participant in the recommended inpatient treatment program. The assessment clinician noted that respondent had "no recognition" of addiction and believed she could "just stop anytime." Respondent was driven to an inpatient detoxification program but left 12 hours before completing the process. Respondent completed a second substance abuse assessment and initially engaged in services but was discharged because she missed appointments and had positive drug screens. Respondent was discharged from another substance-abuse program because she was reportedly tampering with her drug screens. In February 2022, respondent completed the first 13 days of the Sacred Heart residential detoxification program, but she was subsequently asked to leave the program. Respondent reported that she had engaged in various substance abuse services, but she would not sign the releases necessary for caseworkers to verify her participation and monitor her progress. The foster care worker testified that respondent had a pattern of starting and stopping various treatment programs which were ineffective in helping respondent overcome her significant substance abuse issues. Also, respondent did not consistently engage in individually therapy or regularly attend weekly AA/NA meetings

The trial court found clear and convincing evidence that respondent did not comply with or benefit from her treatment plan and remained unable to achieve sobriety. The foster care worker

testified that respondent did not benefit from any of the provided services. For more than 182 days, she continued to test positive for illicit drugs: March 23 and March 30, 2022, for fentanyl; April 18, 2022, for methamphetamine and methadone; April 20, 2022, just before the April 25, 2022 termination hearing, for methamphetamine, methadone, cocaine and fentanyl.[1]

In addition to her substance abuse issues, there was ample evidence that respondent continued to struggle with emotional stability and parenting skills. Dr Randall Haugen performed respondent's psychological evaluation and testified at the termination hearing. He reported that, although there was "no direct evidence that she will become physically abusive in a parenting situation," respondent was nonetheless "prone to become preoccupied in her own affairs which can lead to inconsistencies in the delivery of care as well as difficulties maintaining supervision and a structured household." Dr. Haugen further reported that clinical testing revealed respondent's sense of poor self-worth, significant levels of anxiety and feelings of inadequacy, impulsivity, irresponsibility, cynical attitude regarding the motivation of others, and "little to no regard for the wellbeing of others." Further, she was resistant to sources of external control or influence, had a low frustration tolerance, lacked appropriate boundaries, and had poor decision-making skills. Dr. Haugen also testified that respondent's participation in multiple substance abuse treatment programs "lowered the prognosis of success if you have a lot of switching going on."

The record indicates that although respondent could engage well with the children during supervised parenting time, respondent was distracted, particularly by her electronic devices, did not understand proper feeding needs for the children including food hygiene, and made inappropriate statements to the children about the foster parents and the agency. The foster care worker and the parent-support coach testified that respondent was making progress with her parenting services, but that those services ended prematurely when she voluntarily entered a residential treatment program on January 27, 2022 and completed it on February 8, 2022. When parenting time resumed, respondent sometimes fell asleep, and, in one instance, did so while holding one of the children as he began to fall out of her lap. In March 2022, parenting time was shortened from two-hour to one-hour sessions because respondent's lethargy created a safety concern for the children; it was unclear whether the lethargy was due to methadone or illicit drug use. Respondent often arrived late for the one-hour sessions and during this time she was testing positive for drugs. As the trial court noted, respondent's parenting skills never improved to a level that would allow unsupervised parenting time

We hold that the trial court did not clearly err in concluding that the conditions that led the adjudication continued to exist and there was no reasonable likelihood that respondent would rectify her substance abuse, mental health, and parenting issues within a reasonable time considering the children's ages. The trial court was justifiably unpersuaded by respondent's request to be given six more months to benefit from services, explaining, "She's had almost a year and the permanency planning hearing was her notice. That's when her six-month window started for do it and do it right if you want your children. Well, that didn't happen." Citing Dr. Haugen's testimony, the trial court noted that respondent would need at least six to nine months of sobriety,

---

[1] These positive screens came after the one negative screen from Sacred Heart in February 2022.

stable housing and income, and access to a healthy support network before any further reunification efforts might be in order. Further, Dr. Haugen testified that relapse was common, that respondent needed significant substance use interventions, but the record showed that respondent, at best, was just beginning her long path of recovery. The foster care worker opined that, in light of respondent's lack of progress in the previous ten months, it was unlikely that respondent would be successful with additional services. Respondent's renewed argument on appeal, for additional time to achieve sobriety, remains unpersuasive.

"Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision. See *In re Jenks*, 281 Mich App 514, 518 n 3; 760 NW2d 297 (2008)." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Accordingly, we find that the trial court did not err in finding at least one statutory ground supported termination.

## IV. BEST INTERESTS

We need not consider respondent-mother's challenges to the court's best-interest determination, because no such challenge is included in her statement of the questions presented. See MCR 7.212(C)(5); *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995). Nevertheless, we find her arguments unpersuasive.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The focus of the best-interest inquiry is on the child, not the parent. *In re Moss*, 301 Mich App at 87. The trial court may consider various factors when making its best-interest determination, including the child's bond to the parent, *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012), the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the child's need for permanency, stability, and finality, *In re Van Dalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2001), and the advantages of a foster home over the parent's home, *In re Foster*, 285 Mich App 630, 634-635, 776 NW2d 415 (2009). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, there was abundant evidence to support the trial court's determination that it was in the children's best interests to terminate respondent's parental rights. Respondent's continued substance abuse, failure to comply with referrals to address her emotional instability, and her lack of economic or housing stability, despite referrals made as part of her case service plan, were noted on the record. Contrary to respondent's assertions, the trial court considered respondent's bond with her children, and reasonably concluded that respondent had a tenuous bond with the older child, and a very limited bond with the younger one who was out of respondent's care for his entire life. The older child was removed from respondent's care when he was about 14 months old, and the younger one was never in respondent-mother's custody or care. During the proceedings below, the children interacted with respondent-mother for only one or two hours of supervised parenting time per week. The trial court reasonably concluded that the younger child

had a stronger bond with his foster parent, who had cared for him since he was discharged from the hospital two weeks after his birth.

The foster care worker reported that the children were initially placed with their maternal grandfather, but he passed away about three months later. The older child was then placed with his maternal great-grandmother, who supported family reunification, and the younger child was placed with his maternal aunt, who favored permanent placement and adoption because of respondent's long substance abuse history. The children were not placed together because of their respective special needs. The foster care worker opined that it was not in the children's best interests to be returned to respondent's care and that the children needed permanence and finality. The two relatives were willing to adopt the brothers and could appropriately meet the children's needs. The trial court considered the children's relative placements but found that permanency was in the boys' best interests.

The trial court thus properly concluded that each of the children, given their very young ages, needed stability and finality which could be achieved only by adoption, and that termination of respondent's parental rights was in their best interests. *In re Olive/Metts Minors*, 297 Mich App at 41-43.

## V. ASSISTANCE OF COUNSEL

Respondent also claims that she did not receive effective assistance of counsel during the termination proceeding. We disagree.

Respondent's claim that she did not receive effective counsel is preserved because she timely filed a motion for reconsideration in the trial court pursuant to MCR 2.119(F) on the grounds that her attorney did not present certain documents or witnesses that would have strengthened her position. The trial court denied the motion on the ground that respondent's attorney was asked whether he had any proofs after the close of petitioner's proofs, and replied, "No further proofs, your Honor." On appeal, respondent raises, for the first time, specific allegations regarding evidence that trial counsel failed to introduce, including a witness he did not call, as bases for her claim of ineffective counsel. For a preserved issue, a "party is generally free to make a more sophisticated or fully-developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent's claim is not entirely novel, and we will regard her efforts on appeal as a more fully developed argument relating to her motion for reconsideration.

It is well established that a parent involved in a parental rights termination proceeding has the right to appointed, and reasonably effective, counsel. *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71(1988), citing *Reist v Bay Circuit Judge*, 396 Mich 326; 241 NW2d 55 (1976). See also MCL 712A.17c(4); MCR 3.915(B)(1)(b). The principles for analyzing claims of ineffective assistance of counsel in the criminal law context apply in parental rights termination proceedings. *In re Simon*, 171 Mich App at 447; *In re Williams*, 286 Mich App 253, 275-276; 779 NW2d 286 (2009); MCL 712A.17c(4); MCR 3.915(B)(1)(b). In order to prevail on a claim of ineffective assistance, a parent must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that,

but for counsel's errors, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

The existing record does not indicate that respondent's counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Although respondent's attorney chose not to introduce additional proofs at the termination hearing, he did review exhibits and cross-examine all of petitioner's witnesses. And we find respondent's argument that her trial attorney should have introduced certain evidence unpersuasive because the documents she now presents have limited relevancy and the other evidence was already in the record.

Respondent argues that counsel erred in failing to move for admission of a February 8, 2022 letter from Sacred Heart Clearview Women's Specialty Center. But the trial court was aware that respondent had participated in services at Sacred Heart from January 27 to February 8, 2022, as noted it its February 17, 2022 Order After Review Hearing. Similarly, evidence of one negative drug screen, on February 6, 2022, would have carried little probative weight in light of several positive drug screens in March and April 2022. Favorable evidence regarding respondent's parenting, including bonds with the children, as contained in the supportive visitation reports, was summarized in petitioner's updated service-plan reports that were reviewed at the periodic review hearings. Therefore, the reports respondent now highlights were already in the evidence and would be considered cumulative evidence.

Further, whether a caseworker was biased against respondent because of a filed grievance was of little evidentiary value. Respondent is not challenging petitioner's reasonable family reunification efforts, which leaves any issue of a caseworker's bias of marginal significance. Further, nothing in the record indicates that the foster care worker, or other caseworkers, treated respondent unfairly. Respondent's parenting time was reduced from two hours to one in March 2022 due to respondent's lethargy while parenting, which created safety issues for the children, and she often arrived late for those one-hour sessions. Alleged caseworker bias had no bearing on respondent's unwillingness or inability to achieve or maintain sobriety and emotional stability, which were the lynchpins of this case.

Respondent's attorney's decision not to call any witnesses was also reasonable under prevailing professional norms. Parents often do not testify at termination hearings, and the record shows that respondent's attorney fully availed himself of the opportunity to cross-examine all of petitioner's witnesses. Respondent's attorney requested, and was granted, a brief recess after the close of petitioner's proofs so that he could confer with respondent, presumably to discuss whether she should testify. This was a matter of trial strategy. See *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) ("This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight.").

We further conclude that there was no reasonable probability that the outcome would have been different if the documents that respondent presents were admitted into evidence or if respondent had testified. Respondent's offered proof of completing a 13-day detoxification program through Sacred Heart on February 8, 2022 was or could be weighed against her subsequent positive drug screens. The trial court reasonably concluded that whether respondent had completed *any* programs could not counter her positive drug screens just days before the

termination hearing; respondent's continued abuse of substances clearly showed that she had not benefited from services to address her longstanding drug addiction. Similarly, possible testimony regarding respondent's intentions, motivations, and efforts to conquer her drug addiction, or her love of her children, would not overcome the abundant evidence at the termination trial that she could not achieve, much less maintain, sobriety within a reasonable time given that these young children should not wait indefinitely for her rehabilitation. Accordingly, we find that respondent's counsel was not ineffective, and the trial court's decision to terminate respondent's parental rights was based on clear and convincing evidence.

Affirmed.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney