*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEMETRIOUS OMATA BURKS,

      Plaintiff-Appellant,

v

LIBERTY SURPLUS INSURANCE
CORPORATION, PROGRESSIVE ADVANCED
INSURANCE CORPORATION, and JANE DOE,

      Defendants,

and

SHEHATA X. BAILEY,

      Defendant-Appellee.

UNPUBLISHED
April 09, 2026
1:39 PM

No. 371355
Wayne Circuit Court
LC No. 23-001961-NI

Before: YATES, P.J., and MARIANI and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).[1]  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that, in the spring of 2022, he suffered injuries in two separate motor vehicle collisions.  The first collision, which occurred on March 13, 2022, did not involve

---

[1] During the proceedings below, the parties stipulated to the dismissal of defendant Progressive Advanced Insurance Corporation as a party and to the dismissal of all claims against defendant Liberty Surplus Insurance Corporation, and neither party is involved in this appeal.  Accordingly, "defendant" refers only to defendant Bailey.

-1-

defendant. Due to lingering pain in his left arm and back from that collision, MRIs of those areas were performed on March 30, 2022; the MRIs indicated that plaintiff had bulging discs in his lumbar and lower-thoracic spine and disc herniations in his lower-cervical and lower-thoracic spine. Plaintiff thereafter received pain injections and attended weekly physical therapy as treatment.

On May 12, 2022, plaintiff was involved in another motor vehicle collision, this time with defendant. Plaintiff went to the emergency room that same day and reported pain in his upper back, neck, and left shoulder that was "[s]imilar" to what he had experienced in the March 2022 collision; CT scans of those areas were taken, and were negative. Plaintiff reported no dizziness, headaches, or syncope at that time, but returned to the emergency room on May 14, 2022, with complaints of headaches, difficulty seeing, and dizziness; a CT scan of his head was negative, and his neurological examination was normal. On May 19, 2022, at a follow-up visit for treatment of his injuries from the March 2022 collision, plaintiff reported that the pain in his back and neck from that prior collision had "flared . . . from about a 6/10 to an 8/10" after the May 2022 collision. In medical records from February 2023, plaintiff reported dizziness, headaches, and vision changes. A CT scan of his head at that time, and an MRI of his brain in June 2023, were negative. In his subsequent deposition, plaintiff testified that he suffered knee and head injuries during the May 2022 collision, and pain in his upper back beyond what he had been experiencing prior to that collision.

In February 2023, plaintiff filed the instant lawsuit, raising various claims against various defendants arising out of both the March 2022 and May 2022 collisions. As is relevant here, plaintiff pleaded a claim of negligence against defendant in connection with the May collision, alleging that he suffered serious impairment of body function as a result of that collision and was thus entitled to recover damages directly from defendant.[2] In response, defendant filed an answer generally denying plaintiff's allegations.

Defendant subsequently moved for summary disposition under MCR 2.116(C)(10). According to defendant, plaintiff could not maintain his negligence claim against her because he lacked evidence of objective manifestation of his alleged impairments, leaving him unable to show that he sustained a threshold injury under the no-fault act, MCL 500.3101 *et seq*. Defendant asserted that "the only injury supported by the medical records" provided by plaintiff was "headaches," but the evidence to that effect was based on plaintiff's subjective complaints rather than any objective tests or findings. Defendant also noted that, while plaintiff claimed in his deposition that he injured his knee in the collision, there was no evidence of such in the medical records. And while one of the two insurance medical evaluations (IME)[3] plaintiff had undergone indicated that there were subjective complaints related to the May 2022 collision, neither IME

---

[2] Plaintiff also sought from his insurers unpaid personal protection insurance (PIP) benefits in connection with both the March 2022 and May 2022 collisions.

[3] Although the reports from these evaluations describe them as "independent medical evaluations," this Court has previously opted to forgo that "euphemistic term of art." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 478 n 2; 997 NW2d 307 (2022) (quotation marks and citation omitted). We do likewise here.

found objective evidence of such complaints.[4]  As evidentiary support for her motion, defendant attached the following documents and pointed to specific portions of them throughout her brief: (1) a transcript of plaintiff's deposition; (2) medical records related to plaintiff's emergency-room visit immediately after the May 2022 collision; (3) plaintiff's medical progress report from an orthopedic and spine specialist completed one week after that collision; (4) plaintiff's February 20, 2023 medical report from a physician specializing in neurological disorders, along with the results of a June 6, 2023 MRI of plaintiff's brain; (5) a history and treatment chart from plaintiff's primary care physician for a February 17, 2023 visit; (6) a September 7, 2023 report from an IME of plaintiff by a neurologist; and (7) a September 8, 2023 report from an IME of plaintiff by an orthopedic surgeon.

In response, plaintiff asserted that "he suffered knee and head injuries specific to the May 12, 2022 motor vehicle" collision, as well as aggravation of the symptoms of his neck and back injuries from the March 2022 collision.  Plaintiff specifically pointed to his deposition testimony in support, as well the results from the MRIs of his neck and back taken on March 30, 2022. According to plaintiff, those MRI results demonstrated that his "injuries are objectively manifested through objective testing," and caselaw showed that the aggravation of an existing injury was sufficient to substantiate a negligence claim such as his.  Plaintiff also pointed briefly and generally to "injuries and symptoms notated in Emergency Room Records," but did not elaborate.  As his own evidentiary support, plaintiff attached to his motion: (1) a transcript of his deposition; (2) a report detailing the results of his March 30, 2022 MRIs; (3) emergency-room records for his visit immediately after the May 2022 collision and for his visit two days after that collision; and (4) a bill for outpatient medical services plaintiff received after the collision.  Except to the extent defendant's offered proofs overlapped with his own, plaintiff did not acknowledge or address those proofs, including defendant's IME reports.

In reply, defendant argued that plaintiff's offered proofs did not show objective manifestation of his alleged impairments because the MRIs on which plaintiff relied for that showing were completed nearly two months before the May 2022 collision.  While those MRIs thus provided evidence that plaintiff had preexisting injuries at the time of the May collision, they offered nothing to show that the collision aggravated those preexisting injuries.

The trial court thereafter held a hearing on defendant's motion.  At the hearing, defendant argued consistently with her brief, stressing that the only evidence plaintiff identified of an objectively manifested impairment was the March 30, 2022 MRI results, which pre-dated the May 2022 collision and were thus not traceable to it.  Plaintiff responded by arguing for the first time

---

[4] One IME was completed by a neurologist, and the corresponding report noted plaintiff's subjective complaints of "headache[s]" and increased "pain in the neck, left upper extremity . . . , left shoulder and low back" but indicated that plaintiff's neurological and physical examinations were largely normal and the reviewed CT scan and x-rays were negative.  The other IME was completed by an orthopedic surgeon, and the corresponding report similarly noted plaintiff's subjective complaints of exacerbated pain in his neck and back but indicated that the physical examination did not "reveal any significant objective findings that would substantiate" plaintiff's complaints and provided a diagnosis of neck and back pain "without objective findings."

that the parties did not "even get" to "objective manifestation" because one of the IME reports indicated that plaintiff had suffered "a post-concussive syndrome, mild cerebral concussion" from the May 2022 collision; this, according to plaintiff, constituted proof of a serious neurological injury that was sufficient in itself to create a question of fact under the no-fault act. Plaintiff also noted for the first time that the IME report indicated "an exacerbation of . . . prior symptoms sustained in the March [2022] accident," but did not elaborate further. Consistent with her brief, defendant responded that the portion of the IME report touted by plaintiff was based entirely on plaintiff's subjective complaints and plaintiff had offered no proof of objective manifestation of any of his claimed injuries. And as to plaintiff's new argument regarding serious neurological injury, defendant confirmed for the trial court that the argument had not been raised previously and further noted that plaintiff had offered nothing to indicate that "a mild cerebral concussion with headaches, disequilibrium and light-headedness" rose to the level of severity contemplated by the statute.

Following the parties' oral arguments, the trial court granted defendant's motion for summary disposition. The court found that plaintiff failed to present evidence demonstrating objective manifestation of his alleged impairments, noting that plaintiff primarily relied on his own deposition testimony, which was "not objective," and his pre-collision MRIs, which did not provide any "objective evidence of an aggravation" following the collision. The court likewise found that the emergency-room records identified by plaintiff did not provide proof of objective manifestation, as they contained no objective findings substantiating plaintiff's alleged impairments. Lastly, the court declined to consider plaintiff's argument regarding serious neurological injury because he did not brief that argument and instead waited to raise it for the first time orally at the motion hearing. The court thereafter issued a corresponding order granting defendant's motion for summary disposition.

Plaintiff then filed a motion for reconsideration, reiterating his prior arguments and also seeking to attach additional medical records that he had not previously provided. Plaintiff asserted that the court had "made a decision based solely on the cases and information before it" and that, "[h]ad [p]laintiff presented the documents and argument attached to this [m]otion in their initial response and argument, a different disposition of the [m]otion would have resulted." The trial court denied the motion for reconsideration in a written opinion and order.[5] This appeal followed.[6]

---

[5] The trial court decided the motion without oral arguments pursuant to MCR 2.119(F)(2).

[6] This Court initially dismissed plaintiff's claim of appeal for lack of jurisdiction because the final order of dismissal, which was related to defendant Liberty Surplus Insurance Corporation, was "a consent judgment and d[id] not include any provision allowing for an appeal as to certain issues," and plaintiff thus was "not an aggrieved party" who could appeal the order. *Burks v Liberty Surplus Ins Corp*, unpublished order of the Court of Appeals, entered July 1, 2024 (Docket No. 371355), citing MCR 7.203(A); *Sandoval v Farmers Ins Exchange*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket Nos. 361166; 361176); slip op at 4. A conflict panel of this Court subsequently concluded that *Sandoval* was incorrectly decided, holding that "an aggrieved party may raise on appeal issues arising from an earlier order relating to one party even if a later, stipulated final order

-4-

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and it is "properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cantina Enterprises II Inc v Property-Owners Ins Co*, 349 Mich App 682, 689; 28 NW3d 800 (2024). A genuine issue of material fact does not exist unless "the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, 350 Mich App 478, 493; ___ NW3d ___ (2024).

In deciding a motion for summary disposition, the court need only consider the evidence identified by the parties. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). All evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion," *Cantina Enterprises*, 349 Mich App at 690, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). This Court's review of a summary-disposition ruling is limited to the evidence properly presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009); *Barnard*, 285 Mich App at 380.

## III. DISCUSSION

On appeal, plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because he put forth sufficient evidence to create a genuine issue of material fact and because the court should not have refused to consider his argument regarding serious neurological injury simply because he had not briefed it prior to the motion hearing. Defendant also argues that the trial court abused its discretion by denying his motion for reconsideration. We disagree.

### A. DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

Under Michigan's no-fault act, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Here, plaintiff claims to have suffered serious impairment of

---

of dismissal as to another party does not contain a reservation of the right to claim an appeal from the earlier order." *Jaber v P & P Hospitality, LLC*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 363572); slip op at 11-12. In light of this Court's holding in *Jaber*, the Michigan Supreme Court, in lieu of granting leave to appeal, vacated this Court's order and remanded for reconsideration. *Burks v Liberty Surplus Ins Corp*, ___ Mich ___ (2025) (Docket No. 167539). This Court thereafter reinstated plaintiff's claim of appeal. *Burks v Liberty Surplus Ins Corp*, unpublished order of the Court of Appeals, entered May 6, 2025 (Docket No. 371355).

body function from the May 2022 collision. To establish serious impairment of body function, a plaintiff must show their claimed impairment meets the following three requirements:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the accident. [MCL 500.3135(5); see also *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010).]

Aggravation of a preexisting condition can constitute a compensable injury under MCL 500.3135, *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009), but "the plaintiff must show either that his preexisting impairment was exacerbated or that his recovery was prolonged *as a result of* the subsequent accident" and that "this *subsequent* impairment . . . meet[s] the statutory threshold," *Benefiel v Auto-Owners Ins Co*, 482 Mich 1087, 1087 (2008).

In this case, the parties' arguments below and on appeal focus solely on the first of the three serious-impairment requirements: whether plaintiff's alleged impairments were objectively manifested. An impairment is "objectively manifested" when it "is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196; see also MCL 500.3135(5)(a). An impairment is distinct from an injury, and "the proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *McCormick*, 487 Mich at 197. "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018), citing *McCormick*, 487 Mich at 198. "Medical testimony is generally, but not always, required" to show an objectively manifested impairment. *Patrick*, 322 Mich App at 607.

The threshold question of whether a plaintiff has suffered serious impairment of body function should be determined by the court as a matter of law if there is no factual dispute regarding "the nature and extent of the [plaintiff's] injuries" that is material to determining whether the serious-impairment standard is met. *McCormick*, 487 Mich at 193, quoting MCL 500.3135(2)(a) (quotation marks omitted). "However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." MCL 500.3135(2)(a)(*ii*); see also *Churchman v Rickerson*, 240 Mich App 223, 226, 229; 611 NW2d 333 (2000).

As noted, defendant moved for summary disposition on the basis that plaintiff lacked evidence of objective manifestation of his alleged impairments. In so doing, defendant bore "the initial burden of production." *Quinto v Cross and Peters Co*, 451 Mich 358, 361; 547 NW2d 314 (1996); see also MCR 2.116(G)(4). Defendant could satisfy this burden in one of two ways: (1) by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) by "demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto*, 451 Mich at 361-362 (quotation marks and citation omitted). Here, whether plaintiff's alleged impairments were objectively manifested is an essential element of plaintiff's claim. See *McCormick*, 487 Mich at 195. And as summarized above, defendant, in moving for summary disposition, produced and specifically identified evidence that, according to defendant, showed a lack of objective manifestation of plaintiff's alleged impairments. Defendant therefore satisfied her initial burden by demonstrating that plaintiff could not establish an essential element of his claim. See *id.*; *Quinto*, 451 Mich at 362.

The burden then shifted to plaintiff, as the nonmoving party, "to establish that a genuine issue of disputed fact exist[ed]." *Quinto*, 451 Mich at 362. "A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10). The court rule plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). Indeed, "[w]here the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto*, 451 Mich at 362. "If the [nonmoving] party fails to present documentary evidence establishing the existence of a material factual dispute, the motion [for summary disposition] is properly granted." *Id.* at 363.

The trial court concluded that plaintiff did not satisfy this burden, and we see no error in that determination. Plaintiff, in his response to defendant's motion for summary disposition, generally asserted that he injured his knee, but he identified nothing—either in his written response or at the motion hearing—to demonstrate any objective manifestation of that alleged impairment. As to his neck and back, plaintiff claimed the May 2022 collision aggravated his preexisting injuries from the March 2022 collision, but as evidence that this claimed aggravation was objectively manifested, plaintiff only offered the MRI images that were taken on March 30, 2022—well before the May 2022 collision. At no point has plaintiff explained how this proof of his preexisting injuries might alone be sufficient to demonstrate an objectively manifested aggravation of those injuries by the May 2022 collision. See *Benefiel*, 482 Mich at 1087 (emphasizing that a "plaintiff must show either that his preexisting impairment was exacerbated or that his recovery was prolonged *as a result of* the subsequent accident for which he seeks noneconomic damages" and that "this *subsequent* impairment must meet the statutory threshold"). And as defendant pointed out in her motion, while plaintiff's medical records indicate that he complained of heightened pain in his neck and back in the days following the May 2022 collision, and those subjective complaints are correspondingly reflected in the IME reports, this evidence did not show objective manifestation of those subjective complaints. See *Patrick*, 322 Mich App at 607. Plaintiff failed to meaningfully rebut defendant's position in that regard or identify any

other evidence to demonstrate that the claimed aggravation of his preexisting neck and back impairments was objectively manifested.[7]

Finally, regarding his alleged impairment from a head injury, plaintiff did not address this particular impairment at all in his written response to defendant's motion, despite it being the focus of that motion. His first argument on the matter came at the motion hearing, where he maintained that he did not need to provide any evidence of objective manifestation of the impairment because the neurologist's IME report satisfied the "closed-head injury exception" set forth in MCL 500.3135(2)(a)(*ii*). The trial court ultimately rejected that argument because plaintiff had not advanced it in his written response. Plaintiff asserts that the court's refusal to consider his argument on that basis amounted to an abuse of discretion, but he offers no authority in support of that particular proposition. See, e.g., *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009) (discussing the need to sufficiently brief and support a position to properly present it for appellate review). And in any event, plaintiff has not shown that the argument he offered to the trial court on this point had merit. The only evidence plaintiff identified in support of his argument was the neurologist's IME report, which plaintiff holds out as showing a diagnosis of "a mild cerebral concussion with residual symptoms." MCL 500.3135(2)(a)(*ii*), however, expressly requires "testi[mony] under oath"; plaintiff fails to explain how the IME report here might satisfy that requirement. See *Greater Bethesda*, 282 Mich App at 413. Furthermore, the sworn testimony must indicate "that there may be a serious neurological injury." MCL 500.3135(2)(a)(*ii*). This "requires more than a diagnosis that a plaintiff has sustained a closed-head injury"; instead, there must be at least "some indication by the doctor . . . that the injury sustained by the plaintiff was

---

[7] Our dissenting colleague finds grounds for reversal on this point, opining that the trial court's ruling "is contradicted by plaintiff's medical records and the report" of the neurologist who conducted one of the IMEs for defendant. The medical records identified, however, were not part of the record before the trial court at the time of its ruling on defendant's motion for summary disposition. See *Innovative Adult Foster Care*, 285 Mich App at 475-476; *Barnard*, 285 Mich App at 380. Rather, as discussed *infra*, plaintiff did not seek to offer those records until his motion for reconsideration, and we find no error in the trial court's refusal to consider them at that time. Furthermore, while those records reflect certain physical complaints by plaintiff, we fail to see in them any evidence that plaintiff's claimed aggravation of his preexisting condition was itself objectively manifested. See *Benefiel*, 482 Mich at 1087. As for the neurologist's IME report, it was properly before the trial court at the time of its summary-disposition ruling, but as discussed, plaintiff failed to meaningfully engage with the report. Plaintiff made no mention of the report whatsoever in his response to defendant's motion for summary disposition, and while plaintiff noted at the motion hearing that the report indicated "an exacerbation . . . of prior symptoms sustained in the March [2022] accident," he failed to explain how the report evidenced not simply his complaints of that exacerbation, as defendant posited, but the requisite objective manifestation of it. See *id.*; *Patrick*, 322 Mich App at 607; see also *Barnard*, 285 Mich App at 380-381. Nor does our review of the report reveal as much; while the neurologist observed, in his examination, a reduced pinprick sensation in particular spots, the report (which generally addressed both the March 2022 and May 2022 collisions) did not indicate that this reflected an aggravation of prior symptoms or impairments from the March 2022 collision.

-8-

severe." *Churchman*, 240 Mich App at 229-230. At no point has plaintiff substantiated his suggestion that the diagnosis he attributes to the IME report would rise to the level of severity required by MCL 500.3135(2)(a)(*ii*). See *id*. at 229-231; see also *Greater Bethesda*, 282 Mich App at 413.

As this Court has explained, MCL 500.3135(2)(a)(*ii*)'s "closed-head injury exception" was not the only way that plaintiff could seek to demonstrate a genuine issue of material fact with respect to his alleged impairment from a head injury; he could also "establish a factual question [in that regard] under the broader language set forth in subsection 3135(2)(a)(*i*) and (*ii*)." *Churchman*, 240 Mich App at 232. Plaintiff, however, opted to focus instead on how he did not need to meet MCL 500.3135(2)(a)'s broader requirements—namely, proof of objective manifestation—because the "closed-head injury exception" applied. Correspondingly, plaintiff did not address below—nor has he meaningfully countered on appeal—defendant's position that the IME report at issue would at most reflect a physician's assessment of plaintiff's subjective complaints, and does not itself provide evidence of objective manifestation of those complaints. See *Turkelson*, 322 Mich App at 607; see also *Quinto*, 451 Mich at 362-363. Similarly, while plaintiff stresses on appeal that he "presented emergency room records documenting post-concussive symptoms," he continues to fail to cite to any specific portions of those records in support of his position. And our review of those records reflects (1) no subjective complaints or objective findings regarding headaches, dizziness, or other neurological symptoms during plaintiff's emergency-room visit immediately after the collision, and (2) subjective complaints of headaches during his emergency room visit two days after the collision, but no objective manifestation of those complaints. As discussed, "mere subjective complaints of pain and suffering are insufficient to show impairment[.]" *Turkelson*, 322 Mich App at 607.

Lastly, plaintiff protests that the trial court's rejection of his position was too demanding and harsh, as he was only required to produce "responsive evidence" in opposing defendant's motion; according to plaintiff, he did not even "need to file a responsive answer" to the motion and "could have submitted a packet of affidavits and documents which [he] believed negated [defendant's] evidence without more." Controlling authority, however, indicates otherwise. See, e.g., *Quinto*, 451 Mich at 362 (requiring the nonmoving party "to *set forth specific facts* showing a genuine issue of material fact exists" with respect to dispositive issues on which the party bears the burden of proof) (emphasis added); *Barnard*, 285 Mich App at 380-381 (explaining that "the trial court [i]s not obligated under MCR 2.116(G)(5) to scour the record to determine whether there exists a genuine issue of fact to preclude summary disposition," but rather the nonmoving party "ha[s] the obligation to set forth specific facts showing that there is a genuine issue for trial") (quotation marks and citations omitted); see also MCR 2.116(G)(1) (providing that "except as otherwise provided in this subrule, MCR 2.119 applies to motions under this rule"); MCR 2.119(A)(2) (providing, in relevant part, that "[a] . . . response to a motion that presents an issue of law *must be accompanied by a brief* citing the authority on which it is based") (emphasis added). In light of "the evidence properly presented to the trial court," *Barnard*, 285 Mich App at 380, we cannot conclude that plaintiff satisfied his burden of establishing a genuine issue of material fact regarding the objective manifestation of his alleged impairments. See *McCormick*, 487 Mich at 197-198; see also *Quinto*, 451 Mich at 362-363. Nor has plaintiff shown that defendant's motion for summary disposition should have been denied on the basis of MCL 500.3135(2)(a)(*ii*)'s "closed-head injury exception." Accordingly, we see no error in the trial court's award of summary disposition to defendant. See *Quinto*, 451 Mich at 363.

## B.  PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff has also failed to show any error in the trial court's denial of his motion for reconsideration.  "Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted."  MCR 2.119(F)(3).  It is similarly well established that a trial court does not abuse its discretion by denying a motion for reconsideration that is based on arguments and evidence "that could have been presented the first time the issue was argued."  *Churchman*, 240 Mich App at 233; see also *Wood v SLB Prop Mgt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008).  Here, as summarized above, plaintiff's motion for reconsideration was based only on arguments and evidence that either were or could have been presented previously.  In the motion, plaintiff expressly recognized that the trial court, in granting summary disposition to defendant, had "made a decision based solely on the cases and information before it" at the time of its decision.  And, in seeking reconsideration of that decision, plaintiff simply reiterated his prior response to defendant's motion, or sought to present new evidence and arguments without explaining why they were not raised in that prior response.  We find no abuse of discretion in the trial court's denial of such a motion.

In sum, we do not see, in plaintiff's arguments on appeal, any error in the trial court's award of summary disposition to defendant or its denial of plaintiff's motion for reconsideration.

Affirmed.


/s/ Christopher P. Yates
/s/ Philip P. Mariani